IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYREEK BLAKENEY, | : | No. 3:25-CV-2062 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| LAUREL HARRY, *et al.*, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Kyreek Blakeney initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging multiple, unrelated constitutional violations by prison officials at SCI Camp Hill.  The court will dismiss most of Blakeney's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and will provide limited leave to amend.

## I.    BACKGROUND

Blakeney lodged the instant Section 1983 action in this court in October 2025.  (See generally Doc. 1).  However, he did not properly move for leave to proceed *in forma pauperis* and pay the statutorily mandated initial partial filing fee until March 11, 2026.  His *pro se* complaint is now properly before the court for screening pursuant to 28 U.S.C. § 1915A(a).

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

Blakeney's complaint is a model of "kitchen sink" or "shotgun" style pleading, where he attempts to raise every conceivable claim regarding every conceivable wrong against every conceivable defendant. Such pleading is confusing, unfair to opposing parties, a waste of judicial resources, and likely a violation of Federal Rule of Civil Procedure 11, and thus it is impermissible. See Pelphrey-Weigard v. Res. for Human Dev., Inc., __ F. Supp. 3d__, __, 2026 WL 267072, at *2-3 (E.D. Pa. 2026) (collecting cases); see also Mary Ann Pensiero, Inc. v. Lingle, 847 F.2d 90, 97 (3d Cir. 1988) (acknowledging that "the practice of 'throwing in the kitchen sink' at times may be so abusive as to merit Rule 11 condemnation"); McClain v. Carney, No. 2:23-cv-4012, 2024 WL 113761, at *5 (E.D. Pa. Jan. 10, 2024) (noting that district courts "have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison[.]"). Nevertheless, because Blakeney is acting *pro se* and this is his first pleading attempt, the court will screen his complaint rather than dismissing it outright.

Blakeney first alleges that on March 17, 2025, while on administrative custody status, he was assigned a cellmate—"Devin Crocdock"—who Blakeney asserts was on disciplinary custody status. (Doc. 1 ¶¶ 2, 4). Blakeney recounts that he informed the second-shift sergeant about their difference in custody status, and the unidentified sergeant told Blakeney that he would look into it. (Id.

2

¶ 3).  According to Blakeney, Crocdock also stopped a different officer—C.O. Tidwell—and told Tidwell that he was supposed to be moved to an unoccupied cell, but that move did not occur.  (Id. ¶ 4).  Blakeney asserts that "double celling" inmates in Level 5 housing is a "last resort" and appears to allege that being celled with Crocdock may have violated Pennsylvania Department of Corrections (DOC) policy.  (Id. ¶ 8).

Blakeney alleges that early the next morning, Crocdock attacked him from behind and rendered him unconscious.  (Id. ¶ 6).  Blakeney asserts that when he regained consciousness, Crocdock was sexually assaulting him.  (Id.)  Blakeney further alleges that Crocdock then alerted nearby corrections officers about what he had done, and "a response was called in."  (Id.)  Blakeney was taken to medical, where he claims that an unidentified lieutenant disposed of some of the evidence of the sexual assault.  (Id. ¶ 7).

Blakeney's complaint then abruptly switches gears, reverting to a previous incident that purportedly occurred in February 2025.  In that incident, Blakeney alleges that he was taken to the Restricted Housing Unit (RHU) after reporting to a corrections officer that he had been assigned a cellmate even though he was a "Z code" and should have been single-cell status.  (Id. ¶ 9).  It is difficult to understand Blakeney's allegations, but he appears to contend that the RHU cell

3

where he was assigned was contaminated with "O.C"[2] that he had to clean by hand and that the cell also had an uncomfortable mattress. (Id. ¶ 12).

Blakeney next alleges that he was issued a "fabricated" misconduct by C.O. Zimmerman based on refusing a meal. (Id. ¶ 13). It appears that Blakeney is contending that he was moved to the RHU due to this allegedly fabricated misconduct. (Id. ¶¶ 14, 17). He also claims that his food was taken off the serving tray and served in an "unclean" metal "box on wheels," which appears to be a description of the cell door's aperture. (Id. ¶ 14). He alleges that the aperture contained insects and rodent feces, and that his food was delivered for "days" in this manner. (Id.)

In his next unrelated claim, Blakeney alleges that unidentified corrections officers scratched his glasses while searching his cell on February 16, 2025. (Id. ¶ 15). He further avers that the officers who searched his cell threw away some of his grievance-related paperwork and personal belongings. (Id.)

In a fourth unrelated claim, Blakeney alleges that multiple corrections officers made offensive comments about him in front of other inmates, calling him names like "snitch" and "faggot." (Id. at p. 11).[3] He additionally contends that

---

[2] Blakeney's use of the initials "O.C." is likely an abbreviation for "oleoresin capsicum" spray, often colloquially referred to as pepper spray.

[3] Beginning on page 10 of his complaint (CM/ECF page 11), Blakeney stops numbering his paragraphs.

these officers issued several "falsified" misconducts concerning threatening a corrections officer and possessing contraband, which in fact is another unrelated claim.  (Id.)

In a sixth and final unconnected claim, Blakeney alleges that Captain Elwell and other corrections officers contaminated his hamburger with O.C. spray on one occasion.  (Id. at p. 12; Doc. 1-1 at 9).  Blakeney's complaint does not state when this incident took place, but from his attached grievance materials it allegedly occurred on March 4, 2025.  (See Doc. 1-1 at 9-10).

Blakeney sues thirty-nine Defendants.  (See Doc. 1 at p. 2).  He purports to assert Section 1983 claims under First, Eighth, and Fourteenth Amendments. (Id. at p. 3).  He additionally appears to raise a claim of civil conspiracy, as well as various state-law claims.  (Id.)  Blakeney seeks $100 million in compensatory damages, $50 million in punitive damages, and court costs.  (Id. at pp. 3-4).  He also requests injunctive relief in the form of cessation of retaliation, transfer to a different prison, expungement of misconducts, and employment-related punishments for Defendants.  (Id. at p. 4).

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees.  See 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening

stage is if the complaint "fails to state a claim upon which relief may be granted[.]" Id. § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). See Grayson v. Mayview State Hosp., 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); O'Brien v. U.S. Fed. Gov't, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); cf. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230

6

(3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Blakeney proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when

7

the *pro se* litigant, like Blakeney, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Before addressing the sufficiency of Blakeney's complaint, the court must identify the claimed constitutional violations.  See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).  As best as the court can determine, Blakeney is asserting the following constitutional torts: (1) First Amendment retaliation; (2) Eighth Amendment failure to protect; (3) Eighth Amendment conditions of confinement; (4) Fourteenth Amendment deprivation of property without due process of law; (5) Fourteenth Amendment procedural due process; and (6) civil conspiracy.  It appears that Blakeney is also attempting to assert state-law tort claims of assault and defamation, as well as violations of various Pennsylvania statutes, although it is impossible to discern the contours of these claims or against whom they are lodged.  (See Doc. 1 at p. 3).

Additionally, Blakeney purports to assert multiple other Section 1983 claims, including excessive force, equal protection, and violation of federal

8

statutes 18 U.S.C. §§ 241-246 and the Americans with Disabilities Act of 1990 (ADA). These claims have no supporting facts and are entirely conclusory, and therefore they will be disregarded. Connelly, 809 F.3d at 787. In addition, many—if not all—of Blakeney's claims are unrelated and target different defendants, thus violating the permissive joinder rules found in Federal Rule of Civil Procedure 20. The court will discuss Blakeney's many pleading deficiencies in turn.

### A.      First Amendment Retaliation Claim

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010)). To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. Id. (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001));

9

Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (quoting Rauser, 241 F.3d at 333).

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months. See Conard v. Pa. State Police, 902 F.3d 178, 184 (3d Cir. 2018). However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant." Id. Another approach is to demonstrate "a pattern of antagonism coupled with timing." DeFlaminis, 480 F.3d at 267. Finally, causation can be inferred "from the evidence gleaned from the record as a whole." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)). Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]" Moore v. City of Philadelphia, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

10

Most of Blakeney's retaliation claims fail.  First, Blakeney does not specify what First Amendment protected conducted was the impetus for Defendants' alleged retaliation.  On the initial page of his complaint, he vaguely states "grievances, PREA, and verbal complaints," (Doc. 1 at p. 3), but he does not associate those protected activities with any particular adverse action, nor does he explain against whom those grievances or complaints were lodged or who took the adverse action.

Construing his complaint liberally, it is possible that Blakeney is claiming that he was issued a fabricated misconduct by C.O. Zimmerman in retaliation for the protected conduct of "making complaints to Unit Managers, and the PRC."[4] (See Doc. 1 ¶¶ 13-14).  Blakeney further alleges that C.O. Zimmerman later told him that filing grievances and abuse allegations "will only make you stay here

---

[4] Blakeney also appears to allege that he was denied a meal for "making complaints to Unit Managers, and the PRC." (Doc. 1 ¶ 13). Multiple courts, however, have repeatedly held that the denial of a meal (or several nonconsecutive meals) does not rise above the *de minimis* level to constitute an adverse action for a retaliation claim. See Romero v. Lann, 305 F. App'x 242, 243 (5th Cir. 2008) (nonprecedential) (denial of two meals over eight months was *de minimis* for retaliation claim); Ramey v. Marsh, No. 4:21-cv-01018, 2022 WL 363854, at *3 (M.D. Pa. Feb. 7, 2022) (withholding single meal does not qualify as adverse action for retaliation claim); Coit v. Luther, No. 1:19-cv-02036, 2021 WL 5792697, at *10 (M.D. Pa. Dec. 7, 2021) (explaining that "occasional denial of meals does not constitute sufficient adverse action" for retaliation claim and thus denial of one meal was *de minimis*); Daughtry v. Kauffman, No. 3:17-cv-0442, 2021 WL 4502256, at *13 (M.D. Pa. Sep. 30, 2021) (denial of two meals five days apart was *de minimis* and thus not an adverse action for First Amendment retaliation claim); Sears v. Mooney, No. 1:17-cv-50, 2019 WL 6726839, at *8 (M.D. Pa. Dec. 11, 2019) (denial of one food tray did not rise to level of adverse action); Frazier v. Daniels, No. 09-cv-3612, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010) (denial of two meals did not constitute adverse action for retaliation claim).

11

longer," apparently referring to placement in the RHU. (See id. ¶ 14). These allegations, while leaving much to be desired, plausibly state a First Amendment retaliation claim by a *pro se* prisoner-plaintiff.

To the extent that Blakeney is attempting to assert other retaliation claims against different Defendants, he does not specify what previous grievances or complaints he is referring to, whom those complaints targeted or affected, how any Defendant had knowledge of this protected conduct, or what adverse action was taken against him. Rather, his lone viable retaliation claim is against C.O. Zimmerman. All other retaliation claims will be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

## B. Eighth Amendment Failure to Protect Claim

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012) (citation omitted), abrogated on other grounds as noted by Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Prison officials, therefore, have "a duty to protect prisoners from violence at the hands of other prisoners." Id. (alteration in original) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

12

To establish an Eighth Amendment failure-to-protect claim against a prison official, the inmate must show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to [the prisoner's] health and safety, and (3) the official's deliberate indifference caused [the prisoner] harm." Bistrian, 696 F.3d at 367. In this context, deliberate indifference is a subjective standard; that is, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)). Actual knowledge or awareness of a substantial risk to an inmate's safety can be proven "in the usual ways, including inference from circumstantial evidence." Id. (quoting Farmer, 511 U.S. at 842).

Blakeney appears to allege that prison officials failed to protect him from the sexual assault by inmate Crocdock. His failure-to-protect claim fails because he has not alleged facts showing that any particular Defendant was deliberately indifferent to a substantial risk to Blakeney's health or safety or that any Defendant's deliberate indifference caused his harm. Blakeney does not plead that any Defendant had knowledge that Crocdock posed a risk of assault (sexual or otherwise) to Blakeney, nor does he allege that any Defendant acted with deliberate indifference to a substantial risk to Blakeney's health or safety. At most, Blakeney alleges that being celled with Crocdock may have violated best

13

practices or DOC policy where "double celling an inmate in Level 5 housing is a last resort[.]" (Doc. 1 ¶ 8). But these allegations, which perhaps implicate negligence, fall far short of demonstrating deliberate indifference to a substantial risk of serious harm. Nor do they establish that any Defendant's deliberate indifference caused Blakeney's harm. In fact, Blakeney does not even allege which prison official (or officials) made the decision to house Crocdock and Blakeney together.

Without any allegations showing deliberate indifference or causation, Blakeney's failure-to-protect claim must be dismissed for failure to state a claim under Section 1915A(b)(1).

### C.    Fourteenth Amendment Deprivation of Property Claim

Blakeney contends that unidentified prison officials improperly damaged or confiscated his personal property during a cell search. As best as the court can discern, the only possible constitutional tort that Blakeney could be asserting here is a Fourteenth Amendment claim of deprivation of property without due process of law. See Hudson v. Palmer, 468 U.S. 517 530, 533 (1984). This constitutional tort, however, has significantly limited application. Most acutely, such a due process claim is barred when "adequate state post-deprivation remedies are available." Id. at 533.

Blakeney's complaint is silent as to whether adequate state post-deprivation remedies exist for the loss of his property, but the court observes that state tort law provides a remedy for his claim.  See 42 PA. CONS. STAT. § 8522(a), (b)(3) (waiving state statutory sovereign immunity for negligent acts related to the "care, custody or control of personal property in the possession or control of Commonwealth parties"); Snead v. SPCA of Pa., 929 A.2d 1169, 1183 (Pa. Super. Ct. 2007) (explaining intentional tort of conversion); see also Cruz v. SCI-SMR Dietary Servs., 566 F. App'x 158, 160 (3d Cir. 2014) (nonprecedential) (noting that district court correctly dismissed Fourteenth Amendment due process property deprivation claim due to existence of state post-deprivation remedies). The United States Court of Appeals for the Third Circuit has also held that the prison grievance process constitutes an adequate post-deprivation remedy for loss-of-property claims, even if the plaintiff disagrees with the results.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

Accordingly, because adequate state post-deprivation remedies are available, any constitutional deprivation-of-property claim Blakeney is asserting must be dismissed for failure to state a claim upon which relief may be granted. Dismissal of this claim will be with prejudice, as granting leave to amend would be futile.  Blakeney cannot replead this claim in a way that would avoid the existence of adequate state post-deprivation remedies.  See Shane v. Fauver,

15

213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

### D.    Fourteenth Amendment Procedural Due Process Claim

Blakeney may be attempting to assert a Fourteenth Amendment procedural due process claim regarding his misconducts and resultant placement in administrative custody.  If so, that claim likewise fails.

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

To the extent that Blakeney is attempting to assert a procedural due process claim regarding the misconducts issued against him or the fact that he was held in administrative custody during the disciplinary process, he has not

16

done so.  Blakeney has not identified a protected liberty interest with respect to being placed in administrative custody for the temporary periods surrounding his misconduct investigations and hearings.  The Supreme Court of the United States has found generally that administrative segregation does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment.  Sandin v. Conner, 515 U.S. 472, 484, 486 (1995).  The Third Circuit, moreover, has repeatedly held that disciplinary segregation for periods much longer than that of which Blakeney complains does not rise to the level of an atypical and significant hardship.  See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); Griffin v. Vaughn, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); Dunbar v. Barone, 487 F. App'x 721, 725 (3d. Cir. 2012) (540 days).  Because Blakeney has not identified a protected liberty interest that is at stake, he has failed to state a Fourteenth Amendment procedural due process claim.

### E.    Eighth Amendment Conditions of Confinement Claim

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort." Thomas v. Tice, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original)

(quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981)). Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or inhumane treatment, such as deprivation of "basic human needs" like "food, clothing, shelter, medical care, and reasonable safety[.]" <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993) (citation omitted).

To state an Eighth Amendment conditions-of-confinement claim, a plaintiff must plausibly plead both objective and subjective elements. <u>See Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 226 (3d Cir. 2015). Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation. <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 843 (1994); <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" <u>Clark v. Coupe</u>, 55 F.4th 167, 179 (3d Cir. 2023) (quoting <u>Farmer</u>, 511 U.S. at 834).

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety." <u>Chavarriaga</u>, 806 F.3d at 226 (citing <u>Farmer</u>, 511 U.S. at 834). Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or

inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." Id. at 227 (citing Farmer, 511 U.S. at 842).

As to the first element, Blakeney has not identified a sufficiently serious deprivation of life's necessities. He alleges that he was housed in a cell that contained O.C. spray residue and had an uncomfortable mattress. He further alleges that his food was contaminated when it was taken off the serving tray and placed in the cell door aperture. Blakeney does not plead how long he was confined in these conditions, but it appears to have been for "days," rather than weeks or months. (See Doc. 1 ¶ 14).

These conditions, while uncomfortable, do not rise to the level of a constitutional violation. See, e.g., Freeman v. Miller, 615 F. App'x 72, 77-78 (3d Cir. 2015) (nonprecedential) (seven days without mattress, shower, soap, recreation, or toilet paper due to suicide risk not unconstitutional); Adderly v. Ferrier, 419 F. App'x 135, 139 (3d Cir. 2011) (nonprecedential) (seven days without clothing, toiletries, mattress, and shower was harsh but not a deprivation of life's necessities); Stephens v. Cottey, 145 F. App'x 179, 181 (7th Cir. 2005) (nonprecedential) (three days without a mattress and having to sleep on a metal bedframe did not violate Eighth Amendment); Williams v. Delo, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothing, mattress, or bedding not Eighth Amendment violation); Maldanado v. Dep't of Corr., No. 1:13-CV-2249, 2017 WL

19

3034768, at *3 (M.D. Pa. July 18, 2017) (four or five days without mattress not a cognizable conditions-of-confinement claim); Milhouse v. Gee, No. 1:09-CV-2134, 2011 WL 3627414, at *12 (M.D. Pa. Aug. 17, 2011) (two weeks without a mattress did not violate Eighth Amendment).

In a separate section of his complaint, Blakeney alleges that multiple corrections officers made offensive comments to him in front of other inmates, including calling him derogatory names in an attempt to "humiliate" him. (See Doc. 1 at p. 11). However, it is well settled that conduct like verbal harassment, taunting, and use of profanity, without any injury or threat thereof, is insufficient to implicate a constitutional infringement. See Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); see also Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); Manning v. Flock, No. 1:11-cv-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); Graham v. Main, No. 10-cv-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.") (collecting cases); Mohamed v. Aviles, No. 06-cv-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).

20

Finally, Blakeney alleges that on one occasion on March 4, 2025, corrections officers contaminated his hamburger with O.C. spray. This allegation, while certainly implicating unprofessional and repugnant conduct, does not rise to the level of a *constitutional* violation because it does not implicate a sufficiently serious deprivation of life's necessities.

Additionally, Blakeney has failed to plead deliberate indifference by any Defendant other than "Chaplain Samuel." Blakeney alleges that he informed Chaplain Samuel about the cell conditions (*i.e.*, the O.C. spray and uncomfortable mattress), and Chaplain Samuel "did nothing." (Doc. 1 ¶ 12). Blakeney, however, has failed to plead that any prison official besides Chaplain Samuel knew of these alleged unconstitutional conditions and acted with deliberate indifference toward Blakeney's health or safety.

Because Blakeney has not identified a sufficiently serious deprivation, it follows that he has not plausibly alleged an Eighth Amendment conditions-of-confinement claim against Chaplain Samuel or any other Defendant. This claim will likewise be dismissed pursuant to Section 1915A(b)(1).

### F.    Civil Conspiracy Claim

Blakeney alleges that numerous Defendants were involved in a wide-ranging conspiracy to violate his constitutional rights. It is unclear what type of

federal conspiracy claim he is asserting.  He cites 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986.  (See Doc. 1 at p. 2).[5]

The court need not determine what type of conspiracy Blakeney is attempting to assert.  That is because Blakeney simply uses the term "conspired" in his complaint and does not plead any facts plausibly showing a civil conspiracy.  (See Doc. 1 ¶ 17).

To state a claim for conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert."  See Jutrowski v. Township of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing Kalmanovitz v. G. Heileman Brewing Co., 595 F. Supp. 1385, 1400 (D. Del. 1984), aff'd 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing Black & Yates, Inc. v. Mahogany Ass'n, 129

---

[5] Incidentally, the court observes that Blakeney's invocations of Sections 1981, 1982, 1985, and 1986 are misplaced, as those statutory provisions involve race- or class-based discrimination. See 42 U.S.C. §§ 1981, 1982, 1985, 1986; Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (explaining that Section 1985 conspiracy involves racial or otherwise class-based invidious discrimination).  Blakeney's complaint does not allege race- or class-based discrimination.

F.2d 227, 231-32 (3d Cir. 1941)))); Stankowski v. Farley, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

Blakeney's conclusory assertion of a conspiracy to violate his rights is plainly insufficient to plausibly state a federal conspiracy claim. His only factual allegation regarding conspiracy to retaliate is that Hearing Examiner J. Schneck purportedly stated during the misconduct hearings that he is "riding with staff, don't even bother to appeal." (Doc. 1 ¶ 18). This single allegation is wholly insufficient to plausibly plead a civil rights conspiracy. Accordingly, any federal conspiracy claim Blakeney is attempting to assert will be dismissed for failure to state a claim upon which relief may be granted.

### G.    Official Capacity Claims

Blakeney sues all Defendants in their individual and official capacities. (See Doc. 1 at p. 2). However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity. Additionally, prospective injunctive relief is only available from appropriate Defendants.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state. U.S. CONST. amend. XI; Idaho v. Coeur

d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (1997); Hans v. Louisiana, 134 U.S. 1, 10 (1890).  This immunity from private suit extends to state agencies as well as state officials acting in their official capacity because such lawsuits are essentially civil actions "against the State itself."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.  See 42 PA. CONS. STAT. ANN. § 8521(b); Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).  There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."  Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa., 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, Ex parte Young, 209 U.S. 123 (1908)).

Blakeney's official capacity claims, to the extent they seek monetary damages, are barred by Eleventh Amendment sovereign immunity.  Insofar as Blakeney requests prospective injunctive relief (*e.g.*, expungement of misconducts issued against him), his official capacity claim for retaliation may go forward against the appropriate DOC official: Secretary of Corrections Laurel

24

Harry.  This high-level official is likely the only named Defendant who could effectuate the injunctive relief that Blakeney requests in his lawsuit that is not moot following his transfer out of SCI Camp Hill to SCI Fayette.  See Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (per curiam) (explaining that proper defendant for official capacity claim is the state official "responsible for ensuring that any injunctive relief is carried out"); (Doc. 19 (notice of change of address)).  All official capacity claims against other Defendants will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and (2).

H.    State Law Claims

Blakeney asserts several state-law claims, including the torts of assault and defamation, as well as violation of several Pennsylvania statutes.  However, these claims are either related to Section 1983 claims that are being dismissed or untethered to any federal claim at all.  The court thus declines to exercise supplemental jurisdiction over them or has no supplemental jurisdiction to begin with, respectively.  See 28 U.S.C. § 1367(a) (requiring state law claims to be "so related to" federal claims that they "form part of the same case or controversy"); id. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (explaining that,

absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

## I.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."  Grayson, 293 F.3d at 114.  The court will grant Blakeney limited leave to amend.  Most of his claims, however, may not be amended in this case.

Blakeney is essentially attempting to bring multiple, unrelated lawsuits in a single "shotgun" style complaint.  This he cannot do.  The allegations that make up his various Section 1983 claims are not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying the First Amendment retaliation claim against C.O. Zimmerman, nor is there a "question of law or fact common to all defendants" such that these claims and additional defendants could be permissively joined together in this action.  See FED. R. CIV. P. 20(a)(2)(B).

Blakeney is free to file additional lawsuits based on these unrelated allegations, although the court notes that each claim would likely require a separate Section 1983 lawsuit and he would be required to pay the filing fee for

26

each case. See id.; George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); Redding v. Bilinski, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same). Blakeney would also have to cure the pleading deficiencies in those claims as outlined in this Memorandum. However, because the Fourteenth Amendment deprivation-of-property claim is being dismissed with prejudice, Blakeney cannot reassert that claim in a separate lawsuit.

If Blakeney chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth any First Amendment retaliation claim (including the instant claim against C.O. Zimmerman) in short, concise, and plain statements, and in sequentially numbered paragraphs (much like he did at the beginning of his original complaint). Blakeney could include a different Section 1983 claim that has been dismissed without prejudice in the instant action, so long as that claim can be permissibly joined to the single, surviving First Amendment retaliation claim against C.O. Zimmerman under the limitations of Rule 20(a)(2). For example, Blakeney could include another claim against C.O. Zimmerman (if he can

27

factually allege such a claim under Rule 11), <u>see</u> FED. R. CIV. P. 18(a) (discussing joinder of claims against an opposing party), or he could attempt to re-plead a different retaliation claim against a different defendant, <u>see</u> FED. R. CIV. P. 20(a)(2)(B).

Regardless of the claim or claims selected, Blakeney must address the pleading deficiencies identified in this Memorandum. Most notably, Blakeney must clearly set forth the personal involvement of any defendant in the alleged constitutional violation. That is, he must plausibly plead the unconstitutional action (or inaction) of <u>each</u> defendant he is attempting to sue.

Blakeney must also sign the amended complaint and indicate the nature of the relief sought. As noted, he <u>may not</u> include unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). If Blakeney desires to raise *related* state-law tort claims, he must clearly indicate what tort claim he is asserting, against whom he is asserting it, and what action or omission by a defendant (or defendants) constituted the tortious conduct.

If Blakeney files an amended complaint that disregards the foregoing guidance, that filing will be summarily stricken from the record. Moreover, Blakeney is explicitly admonished that he may not file another "kitchen sink" or "shotgun" style pleading like his original complaint. Any such pleading will be summarily stricken as well.

If Blakeney does not timely file an appropriate amended pleading, this case will proceed on the following Section 1983 claims only: (1) individual capacity First Amendment retaliation against C.O. Zimmerman; (2) official capacity First Amendment retaliation against Secretary Harry for prospective injunctive relief.

## IV.    CONCLUSION

Based on the foregoing, the court will dismiss in part Blakeney's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Limited leave to amend will be granted.  An appropriate Order follows.

Date: 5/20/26                                    BY THE COURT:

                                                 _____
                                                 JUDGE JULIA K. MUNLEY
                                                 United States District Court